**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE:  ASBESTOS PRODUCT LIABILITY LITIGATION (No. VI) | **Consolidated Under MDL DOCKET NO. 875** |
| **This Document Relates To:** | |
| **HENRY J. KUMFERMAN,** | **E.D. Pa. Case No. 2:10-cv-61429** |
| **Plaintiff,** | (***Transferred from W.D. Wis. Case No. 3:94-cv-799***) |
| **v.** | |
| | **Hon. Eduardo C. Robreno** |
| **ASBESTOS CLAIMS MANAGEMENT CORP., et al.,** | **Mag. David R. Strawbridge** |
| **Defendants.** | **CVLO Group 5** |

**DEFENDANT GENERAL ELECTRIC COMPANY'S MOTION FOR
<u>SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiff Henry Kumferman alleges that he was exposed to asbestos from products manufactured and distributed by numerous defendants, including Defendant General Electric Company ("GE"), and developed asbestosis and colon cancer as a result.  GE is entitled to summary judgment on plaintiff's claims for several reasons.  *First*, there is no evidence that Mr. Kumferman worked on or around any asbestos-containing GE products, much less that he was exposed to asbestos from any GE products.  Without evidence of exposure to a GE product, plaintiff cannot establish causation as to GE.  *Second*, to the extent that plaintiff claims that he was exposed to asbestos associated with a land-based steam turbine manufactured by GE, these claims are barred by the Wisconsin statute of repose.  *Finally*, GE is entitled to summary judgment on Mr. Kumferman's colon cancer claim because he has no expert testimony establishing that his colon cancer was caused by his exposures to asbestos, much less that his

colon cancer was caused by exposures to asbestos from GE products.  Without expert testimony

establishing medical causation, plaintiff's colon cancer claim fails.

## BACKGROUND

Fact discovery closed in this case on August 24, 2012.  *See* Amended Case Management

and Scheduling Order for CVLO-5 (April 12, 2012) (D.E. 88).  As detailed below, there was no

evidence that Mr. Kumferman was exposed to asbestos from any GE products at the time GE

moved initially moved for summary judgment on December 14, 2012.  *See* GE's MSJ, D.E. 178.

Given this lack of evidence, GE argued that plaintiff should be barred from relying on an

affidavit or declaration from such a witness in its brief.  *See id.* at 7-10.  Nonetheless, CVLO

responded to GE's motion by submitting Mr. Kumferman's declaration.  In his declaration, Mr.

Kumferman claimed to have worked around a turbine made by GE during a four to five week

shutdown at the 3M plant in Menomonie, Wisconsin in the 1960s.  *See* Kumferman Decl., D.E.

203-6 at 1-2.  Mr. Kumferman also claimed, for the first time ever, that he worked around

electricians performing maintenance on GE and Westinghouse switchgear at about 75 percent of

his jobs from 1948 to 1980.  *See id.* at 2-3.

GE's reply emphasized that use of Mr. Kumferman's declaration was wholly

inappropriate as his GE exposure testimony was never properly disclosed.  *See* GE's Reply, D.E.

216 at 2-7.  Indeed, on November 16, 2012, Judge Strawbridge recognized the prejudice inherent

in CVLO's all-too-common tactic of responding to "no exposure" summary judgment motions

with declarations from improperly disclosed witnesses like Mr. Kumferman:

> That context strongly suggested to us by the Defendants is that in certain
> cases, Plaintiffs have and presumably will continue to submit declarations in
> response to motions for summary judgment which declarations would come from
> witnesses who may have been disclosed in a non-specific way with many other
> such witnesses shortly before the close of discovery in a particular case.  **We
> agree with Defendants that such a presentation would raise serious questions
> concerning the acceptance of such declarations**, but we are unwilling at this

2

time to grant Defendants' request as we will not enter an order which would, in a preemptory manner, preclude Plaintiffs from utilizing a declaration that has not yet been and may never be filed as part of a summary judgment response.

At the same time we accept the premise of the Defendants' concern and, as we discussed in *Unzicker*, we expect that if a declaration along the lines of what Defendants posit were presented in that case in an attempt to defeat summary judgment, **the prejudice to Defendant would be palpable.**

Memorandum Order, D.E. 174 at 12 (emphasis added)).

On July 23, 2013, with GE's motion fully briefed, the Court entered an order requiring counsel to show cause as to why all pending motions in this and other CVLO MDL No. 875 should not be denied without prejudice and subjected to a new scheduling order.  *See* Show Cause Order, D.E. 254.  Three days later, Mr. Kumferman filed a motion to perpetuate his deposition testimony.  *See* Motion to Perpetuate Testimony, D.E. 255.  GE and several other defendants opposed that motion.  *See* Response in Opposition to Motion to Perpetuate Testimony, D.E. 256.  On August 30, 2012, Judge Strawbridge granted Mr. Kumferman's motion to perpetuate, but made clear "that in granting this request we do not give him permission to reopen discovery or to use the deposition for any purpose other than as trial testimony – including to support a response to any Defendant's motion for summary judgment."  Order, D.E. 269 at 2.

GE timely responded to the Show Cause Order on August 23, 2013, *see* GE's Response to Order to Show Cause, D.E. 264, explaining that the only outstanding issue possibly related to discovery was whether the Court should consider Mr. Kumferman's declaration.  The Court held a hearing on the Show Cause Order on September 4, 2013 and explained, *inter alia*, that defendants should proceed with depositions of witnesses like Mr. Kumferman who submitted declarations in opposition to summary judgment motions.  On September 17, 2013, the Court entered an order setting a schedule for further discovery and summary judgment briefing in this

and 25 other cases.  *See* Renewed Scheduling Order, D.E. 270.  Mr. Kumferman's perpetuation

deposition went forward on October 2, 2013 and continued on October 21, October 22,

November 20, and December 5 due to Mr. Kumferman's physical limitations, which prevent him

from testifying for a full day.

On November 26, 2013, due to confusion about the effect of the Court's comments

during the Show Cause hearing (i.e., that witnesses like Mr. Kumferman should be deposed) and

the Renewed Scheduling Order on Judge Strawbridge's order on the motion to perpetuate

testimony (which held that Mr. Kumferman's testimony could not be used in response to

summary judgment motions), co-defendant Crane Company filed a motion to extend time to file

its summary judgment motion until after the conclusion of Mr. Kumferman's deposition, *see*

D.E. 275, which GE joined on November 27.  *See* D.E. 279.  The Court granted in part and

denied in part the motion to extend the deadline on December 6, 2013, clarifying that Mr.

Kumferman's deposition was "ongoing for the sole purpose of preserving his testimony for use

at trial."  Order, D.E. 289 (emphasis original).

Mr. Kumferman's testimony thus cannot be used to respond to this motion.  As shown

below, there is no evidence that Mr. Kumferman was exposed to asbestos from any GE products.

**Plaintiff's Answers to Interrogatories.**  Throughout much of this litigation, the only

discovery provided by plaintiff was a set of unverified answers to interrogatories.  *See* Plaintiff's

First Response to Standard Interrogatories (Ex. A).  In it, plaintiff asserted that he was plumber

and pipefitter who worked at various industrial facilities in Wisconsin.  *Id.* at No. 23 & Ex. A.

Plaintiff also made a statement of his work history and, with regard to GE, generally claimed that

he "recall[ed] General Electric turbines and motors."  *Id.* at No. 19.  Even if plaintiff had

provided details about his alleged exposure, plaintiff cannot rely on an unverified answer to

4

defeat summary judgment.  *See* Memorandum Order, D.E. 174 at 15 ("any interrogatory

responses that have not been verified by Plaintiff, regardless of the source of the knowledge in

those responses, must be struck").

On August 14, 2012 — ten days before the close of fact discovery — plaintiff first served

a verified set of answers to interrogatories.  *See* Plaintiff's First Response to Standard

Interrogatories – 8/14/12 (Ex. B).  This document was well more than a year overdue.[1]  In these

answers, plaintiff again claimed that he "recall[ed] General Electric turbines and motors."  *Id.* at

No. 19.  Plaintiff did not provide any additional description or information.  For example, he did

not state where those products were located, provide details concerning when or how frequently

he worked on or around those products, or describe what work he did on or around those

products.  *See id.*  In the same answers, plaintiff admitted that he had "[n]o known coworkers."

*Id.* at Ex. B.  Moreover, even if plaintiff had properly disclosed any claims or witnesses in these

answers, GE could not have noticed any depositions before the discovery deadline.  *See*

Deposition Protocol (Ex. C) ¶ 2 (deposition notices must be served "at least 14 days before the

proposed date"); *see also Unzicker v. A.W. Chesterton Co.*, No. 11-cv-66288, 2012 WL

1966028, at *3-4 (E.D. Pa. May 31, 2012) (last-minute dumps of information by CVLO "cannot

be considered compatible with any kind of sensible approach to dealing with discovery").

Accordingly, these answers must be stricken.

On August 24, 2012 — the day discovery closed — plaintiff served a "supplemental"

response to his interrogatory answers.  *See* Plaintiff's Supplemental Signed Response to Standard

---

[1]  The CVLO asbestos cases were first referred to Judge Reed in May 2009.  *See* MDL 875
Master Docket No. 6206-2 (May 4, 2009).  In October 2010, Judge Reed issued an order
requiring each plaintiff to prepare and serve answers to "standard interrogatories."  *See* Order
Regarding Standard Interrogatories (Oct. 5, 2010) (Ex. D).  Completed responses from plaintiffs
were due no later than February 21, 2011.  *See* Order (Nov. 15, 2010) (Ex. E).

Interrogatories – 8/24/12 (Ex. F).  In it, plaintiff disclosed for the first time the name of a single

co-worker, Jim Thompson, who is a client of plaintiff's counsel.  *Id.* at Ex. B.  Plaintiff did not

suggest what defendants, products, jobsites, or timeframes would be the subject of this co-

worker's testimony.  *Id.*  Plaintiff provided no explanation or excuse for the late timing of this

new disclosure.

    ***Depositions.***  Plaintiff has never disclosed which, if any, potential fact witnesses will

offer testimony related to GE.  While plaintiff's counsel noticed the deposition of a single

supposed "co-worker," Mr. Stephen Strassman, Mr. Strassman testified that he did not know the

plaintiff.  Strassman Dep. (Ex. G) at 39:25-40:4 ("Never heard of him").[2]

    It bears mention that plaintiff's counsel noticed Mr. Kumferman's deposition in *other*

cases.  GE, however, was not listed among "the defendants about which [Mr. Kumferman] is

expected to testify."  *See* First Amended Notice of Videotaped Deposition of Henry Kumferman

(Ex. H).  As such, plaintiff cannot use this testimony to establish a claim against GE.  Deposition

Protocol (Ex. C) ¶¶ 6, 11 n.4.  Likewise, as explained above, Mr. Kumferman's perpetuation

deposition cannot be used to respond to this motion.  *See* Order, D.E. 269; Order, D.E. 289.

    ***Plaintiff's Expert Reports.***  Plaintiff has served two case-specific expert reports.  Neither

report mentions GE.  *See* Brautbar Report (D.E. 154-1); Kenoyer and Garza Report (D.E. 154-2).

## ARGUMENT

    Summary judgment is appropriate where there is "no genuine issue as to any material

fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Summary judgment should be granted if a party who bears the burden of proof at trial does not

establish an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

---

[2]  Mr. Strassman is not listed as a co-worker in plaintiff's answers to interrogatories.  *See*
Plaintiff's Supplemental Signed Response to Standard Interrogatories – 8/24/12 (Ex. F) at Ex. B.

In other words, "summary judgment is essentially 'put up or shut up' time for the non-moving party:  the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007) (quoting *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position" is "insufficient" to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

I.     **GE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE PLAINTIFF HAS NO EVIDENCE OF CAUSATION.**

        This case is governed by Wisconsin substantive law.[3]  Causation is an essential element of plaintiff's cause of action and, to recover under Wisconsin law, he bears the burden of proving:  (1) that he was exposed to a particular defendant's asbestos-containing product and (2) that this exposure was a "substantial factor" in causing his alleged injuries.  *See Anderson v. A.W. Chesterton Co.*, No. 2:11-cv-63482, 2012 WL 2877405, at *1 (E.D. Pa. April 5, 2012) (applying Wisconsin law and granting GE's summary judgment motion because "Plaintiff has failed to identify admissible evidence that GE supplied to Mr. Anderson's worksite the asbestos-containing products to which it is alleged he . . . was exposed").  As shown below, plaintiff's claims against GE fail both prongs of this test.

        A.     **The Court Should Not Consider Mr. Kumferman's Declaration.**

        The Court should disregard Mr. Kumferman's declaration.  Mr. Kumferman failed to provide verified interrogatory answers identifying the GE products that he allegedly worked

---

[3]  When an action is transferred pursuant to 28 U.S.C. § 1407, the transferee court applies the substantive law of the original forum.  *See Ferens v. John Deere & Co.*, 494 U.S. 516 (1990).  Because this case was originally filed in Wisconsin, and because plaintiff's product liability claims arise from his alleged exposure to asbestos in Wisconsin, Wisconsin substantive law governs.

around until ten days prior to the close of discovery.  *See* Plaintiff's First Response to Standard

Interrogatories – 8/14/12 (Ex. B) at No. 19 (identifying GE turbines and motors, but failing to

provide any additional information – such as job sites, time periods, or type of work – with

respect to those products).  Given this late disclosure, GE could not depose Mr. Kumferman prior

to the close of fact discovery.  *See* Deposition Protocol (Ex. C) ¶ 2 (deposition notices must be

served "at least 14 days before the proposed date").  Even more prejudicially, Mr. Kumferman's

GE switchgear claim did not surface until he filed his response to GE's initial summary

judgment motion.

The Court is now squarely confronted with the prejudice that Judge Strawbridge

recognized as inherent in CVLO's repeated use of declarations from improperly disclosed

witnesses to respond to "no exposure" summary judgment arguments:

> That context strongly suggested to us by the Defendants is that in certain
> cases, Plaintiffs have and presumably will continue to submit declarations in
> response to motions for summary judgment which declarations would come from
> witnesses who may have been disclosed in a non-specific way with many other
> such witnesses shortly before the close of discovery in a particular case.  **We
> agree with Defendants that such a presentation would raise serious questions
> concerning the acceptance of such declarations**, but we are unwilling at this
> time to grant Defendants' request as we will not enter an order which would, in a
> preemptory manner, preclude Plaintiffs from utilizing a declaration that has not
> yet been and may never be filed as part of a summary judgment response.

> At the same time we accept the premise of the Defendants' concern and,
> as we discussed in *Unzicker*, we expect that if a declaration along the lines of
> what Defendants posit were presented in that case in an attempt to defeat
> summary judgment, **the prejudice to Defendant would be palpable.**

Memorandum Order (11/16/12) , D.E. 174 at 12 (emphasis added).

This reasoning is in accord with the Third Circuit's balancing test to determine the

appropriate exclusionary sanction for discovery violations:

> (1) the prejudice or surprise in fact of the party against whom the excluded
> [material would have been used], (2) the ability of that party to cure the prejudice,
> (3) the extent to which waiver of the rule . . . would disrupt the orderly and

efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness . . . .

*In re TMI Litig.*, 193 F.3d 613, 721 (3d Cir. 1999) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977)).  Forcing GE to work this case up through summary judgment briefing, only to have plaintiff press the reset button by submitting a declaration from a previously un-deposed declarant in response to GE's summary judgment motion is clearly prejudicial, and the Court should not allow such tactics.

If the Court allows CVLO to inject new facts into the case after discovery is closed, discovery would need to be re-opened to allow GE opportunity to depose such a declarant and to re-brief summary judgment.  That is precisely what has occurred in other cases subject to the Court's September 17, 2013 Renewed Scheduling Order.  This course of events has been costly (counsel for GE and other defendants have been forced to prepare for and take depositions from such declarants and to re-brief summary judgment) and disruptive, as a case that was fully briefed in March 2013 will not be decided until after January 10, 2014, when GE's reply is due.

Moreover, waiver of sanctions would encourage similar conduct in the future (and likely has, as CVLO regularly submits product exposure declarations in response to no exposure summary judgment motions),[4] which would frustrate the Court's announced desire to resolve these cases expeditiously.  CVLO did not provide verified interrogatory answers identifying GE turbines and motors until ten days before discovery closed (and even then, did not provide meaningful information about job sites, time periods, or the type of work being performed) and waited until after GE filed its motion for summary judgment to identify Mr. Kumferman's switchgear claims.  Simply put, this amounts to sand-bagging and bad faith.  That suggestion is

---

[4] Indeed, a former CVLO attorney has stated that it is CVLO's "regular procedure" to "wait until an msj is filed and then, if possible, get declarations signed."  Email from R. Archer to A. Gross (Mar. 7, 2013) (Ex. I).

strengthened by the numerous orders in the CVLO MDL litigation that have explicitly warned CVLO of its obligations to (1) provide defendants with information regarding a witness's ability to testify about a particular defendant's products and (2) to do so far enough in advance of the close of discovery as to allow defendants to assess that information and determine whether to depose such witnesses, something it has once again failed to do here.[5]

### B. Summary Judgment for GE is Appropriate Because there is No Evidence that Mr. Kumferman was Exposed to Asbestos from Any GE Products.

Mr. Kumferman bears the burden of proving that he was exposed to an asbestos-containing product for which GE is responsible. *See Anderson*, 2012 WL 2877405, at *1; *see also Risse v. Building Servs. Indus. Supply*, No. 2011AP1415, 2012 WL 2545394, ¶¶ 27-29 (Wis. Ct. App. July 3, 2012). Thus, to survive summary judgment, he must specifically identify, via admissible evidence, the asbestos-containing GE products to which he was exposed. Mr.

---

[5] *See*, *e.g.*, Order Regarding CVLO's "Site Worker" Witness Lists, slip op. at 7 (12/27/12) (Ex. J) (motion for reconsideration pending) (Judge Strawbridge explaining that the standard interrogatories used in the CVLO MDL litigation required plaintiff to disclose "**what witnesses, if any, a Plaintiff reasonably believes to be in a position to connect his or her exposure to a particular Defendant's product**") (emphasis added); Order, *Brigham v. AC&S, Inc.*, No. 2:12-cv-60003, D.E. 124 at 1-2 ("**[W]e have not sanctioned the noticing of depositions after the close of discovery.** GE was not obligated to accept deposition dates proffered by Plaintiffs after the close of discovery. We will not require them to do so.") (emphasis added); Memorandum Order, D.E. 174 at 12 (11/16/12) (submission of declarations "from witnesses who may have been disclosed in a non-specific way with many other such witnesses shortly before the close of discovery in a particular case. . . **would raise serious questions concerning the acceptance of such declarations;" "the prejudice to Defendant would be palpable"** if such declarations were submitted in response to summary judgment motion) (emphasis added); Order Regarding Interrogatory Supplements, D.E. 135 at 2-3 (7/17/12) (mere names and addresses — without the actual subjects of discoverable information, such as particular job sites, particular product knowledge, and particular time periods — renders a witness list deficient and useless); *Unzicker v. A.W. Chesterton Co.*, No. MDL-875, No. 11-cv-66288, 2012 WL 1966028, at *3-4 (E.D. Pa. May 31, 2012) (explaining that CVLO's supplemental disclosures of extensive lists of alleged coworker witnesses, additional job sites, and relevant deposition transcripts made two days prior to close of discovery would likely have been stricken under *In re TMI* "given the prejudice to GE").

Kumferman cannot carry this burden because fact discovery is closed and he has no evidence whatsoever even suggesting that he was exposed to asbestos-containing GE products.

The only evidence of Mr. Kumferman's alleged exposures to any GE products – namely, switchgear and turbines – is Mr. Kumferman's declaration.  The Court should not consider that material for the reasons explained in Section I.A, *supra.*  But even if it does, Mr. Kumferman does not state in his declaration that the GE switchgear and turbines that he allegedly worked around contained asbestos.  As such, it would be speculative to concluded, without evidence, that the GE switchgear at issue contained asbestos.  Such speculation is inadmissible, and is insufficient to defeat a motion for summary judgment.  *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 N.W.2d 652, 654 (Wis. 1978); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position" is "insufficient" to defeat a motion for summary judgment).

> **1.      There is no evidence that GE switchgear that Mr. Kumferman allegedly worked around contained asbestos or that Mr. Kumferman was exposed to any such asbestos.**

Recognizing as much, Mr. Kumferman turns to "evidence" discussed in CVLO's Second Revised Brief re: Electrical Switchgear Asbestos Exposure ("Pl. Switchgear Br."), D.E. 8798 in 2:01-md-00857, to establish the asbestos content and deterioration of GE switchgear.  *See* Pl.'s Response to Court-Ordered Discovery Requests, D.E. 271 at 5.  This generic brief, in turn, refers to the opinions of plaintiff's experts and cites to GE company documents and the deposition of GE's corporate representative in other cases.  *See* Pl. Switchgear Br. at 3-4.  But as plaintiff's own experts acknowledge, CVLO's reference to GE documents and patents does not establish that the switchgear allegedly at issue *in this case* contained asbestos.

**Samuel Wineman.**  Mr. Wineman has disclaimed any expertise on switchgear.  Wineman Dep. (Jurglanis case) (Ex. K).at 206:4-23 (explaining that "I'm not an expert in electrical products" and that his testimony regarding asbestos in switchgear is based only on what he saw in drawings and on what he was told by others).  *See also* Wineman Dep. (Durham case) (Ex. L) at 18:6-9 ("Boilers, plumbing, fire protection, heating, ventilating, air conditioning.  That's my expertise and that's the only thing I testify in."), 17:13-25 (would not feel comfortable testifying as an expert on electrical components).  Absent actual expertise, Mr. Wineman developed his opinion that *every single switchgear above 440 volts manufactured during a forty year period* contained asbestos by talking with manufacturers' representatives and fellow engineers and from "the shop sheets that I've seen."  Wineman Dep. (Jurglanis case) (Ex. K) at 79:2-23.[6]

Yet Mr. Wineman undercut his sweeping pronouncement several times during the Jurglanis deposition.  He testified that he did not know if a 480 volt switchgear (i.e., a switchgear above 440 volts) contained asbestos because he had not seen any manufacturer documentation stating as much.  *See id.* at 80:2-83:10.[7]  Confronted with this evidence, Mr. Wineman quickly retracted his assertion that all switchgear above 440 volts contained asbestos:

> Q.    So just to be clear, now that we're talking about voltages today less than 1,000 volts, it is not your testimony that all insulation in all electrical switchgear under 1,000 volts contains asbestos; correct?
>
> A.    You are right.

---

[6] CVLO did not produce any "shop sheets," *see id.* at 14:5-16:4, nor did Mr. Wineman claim to rely on them in his prior deposition, *see* Wineman Dep. (Woods case) (Ex. M) at 47:15-21 (relying only on materials listed in report), or in his report.  *See* Wineman Report, D.E. 159-10 (no discussion of shop sheets).  Consequently, his report violates Fed. R. Civ. P. 26(a)(2)(B), which required Mr. Wineman to disclose "the facts or data considered" in forming his opinion. Any testimony Mr. Wineman might provide about "shop sheets" should thus be barred.

[7] Despite Mr. Wineman's admission that he would need to see documentation to determine if a switchgear contained asbestos, he was unaware that CVLO has collected hundreds of documents on insulating materials from switchgear from two separate GE facilities.  *See id.* at 83:11-84:7.

*Id.* at 88:17-22.  *See also id.* at 131:23-25 ("Q.  And there's switchgear out there that doesn't

contain asbestos; correct?  A.  Yes.").  At the same time, Mr. Wineman admits that the only ways

to determine whether material is asbestos are to test the material or to review the manufacturer's

literature.  *Id.* at 88:23-89:5.  This testimony, rather than his retracted assertion that all

switchgear above 440 volts contained asbestos, is consistent with what Mr. Wineman has said

under oath before.  Mr. Wineman previously testified that he has "seen no survey, no summary,

of what data had – what percentage of switchgear that is out there" contained asbestos.

Wineman Dep. (Woods case) (Ex. M) at 117:11-16.  Moreover, Mr. Wineman previously

admitted that there may have been high voltage switchgear that did not contain asbestos.  *See id.*

at 116:14-20.[8]

Consequently, Mr. Kumferman cannot rely on Mr. Wineman to establish that the

switchgear that Mr. Kumferman allegedly worked around contained asbestos.  To make this

case-specific link, Mr. Wineman – by his own admission – would need to either review GE's

documentation regarding the composition of the switchgear or test the switchgear for asbestos.

*See* Wineman Dep. (Jurglanis case) (Ex. K) at 88:23-89:5.  He can do neither because the record

is devoid of any information identifying the type of GE switchgear that Mr. Kumferman

allegedly worked around.  *See, e.g.*, Kumferman Decl., D.E. 203-6 at 2-3 (no identifying

information for switchgear).  *See also* Order, D.E. 189 in 2:08-cv-91663 (Apr. 30, 2012) at 14-15

(granting CBS's motion for summary judgment in *Bault* because although there was evidence

that certain Westinghouse switchgear contained asbestos, "there is no evidence that Decedent

---

[8] For instance, Mr. Wineman explained that he is not competent to testify about the materials
used in high voltage switchgear that employs sodium hexafluoride technology.  *See* Wineman
(Jurglanis Dep.) (Ex. K) at 132:1-17.  Likewise, even CVLO concedes that oil-filled switchgear
in production until at least the 1940s "did not use asbestos."  Pl. 3rd Rev. Switchgear Br. at 8.

worked with or around" such switchgear and thus "no reasonable jury could conclude from the evidence that Decedent was exposed to asbestos from a Westinghouse product"); Order, D.E. 163 in 2:08-cv-92083 (Apr. 30, 2012) at 12 (granting CBS's motion for summary judgment in *Buchanan* on same rationale).

Nor can Mr. Wineman establish that Mr. Kumferman was exposed to asbestos from the alleged GE switchgear. Mr. Wineman does not know what the dust inside any switchgear is composed of, *see* Wineman Dep. (Jurglanis case) (Ex. K) at 91:8-11 ("Q. . . . have you seen any test data on the content of any dust inside of any switchgear? A. No, I haven't."), and admits that it is improper to assume that such dust contains asbestos. *See id.* at 92:13-16.[9] Mr. Wineman also does not know how much asbestos could be released from a switchgear:

> Q.   And you have no idea how much asbestos may or may not be released from any asbestos-containing insulation that might be in any switchgear, do you?
>
> A.   No, you don't.

*Id.* at 96:5-9. *See also* Wineman Dep. (Woods case) (Ex.M) at 134:1-135:5 ("can't say scientifically what percentage" of any dust from switchgear contained asbestos).

**Stephen Kenoyer.** Mr. Kenoyer has testified that he "wouldn't have an opinion with regard to whether there was any [asbestos] exposure from [work on switchgear] without having documentation on exactly what type of switchgear it is and what the design specifications for it were." Kenoyer Dep. (Unzicker case) (Ex. N) at 105:7-13; *see also id.* at 104:8-105:6 (could not

---

[9] This is contrary to CVLO's claim that Mr. Wineman testified that dust from "switchgear operating at 440 volts or higher would contain asbestos." Pl. 3rd Rev. Switchgear Br. at 14. As Mr. Wineman explained, that opinion is based on the assumption that the switchgear contained asbestos to begin with. *See* Wineman Dep. (Jurglanis case) (Ex. K) at 95:3-15, 180:2-9. But as shown *supra*, Mr. Wineman cannot determine whether a switchgear contains asbestos unless he reviews the manufacturer's documentation or tests the equipment. *See id.* at 88:23-89:5. He has done neither in this case.

say if "more or less than half" of GE electrical switchgear products contained asbestos).

Information on the type of GE switchgear that Mr. Kumferman worked around is absent from the

record.  *See*, *e.g.*, Kumferman Decl., D.E. 203-6 at 2-3 (no identifying information for

switchgear).  Consequently, Mr. Kenoyer cannot opine that the alleged GE switchgear that Mr.

Kumferman purportedly worked around contained asbestos.

      Nor can Mr. Kenoyer establish that Mr. Kumferman was exposed to asbestos from the

alleged GE switchgear.  As an initial matter, it would be sheer speculation for Mr. Kenoyer to

offer such an opinion, as he does not know whether the GE switchgear that Mr. Kumferman

worked around actually contained asbestos.  *See supra.*  In any event, Mr. Kenoyer readily

admits in his generic report that "exposure studies of the levels of exposure of using compressed

air to blow out switchgears is [sic] unavailable."  Kenoyer Report, D.E. 154-2 at generic report

page 46.

      Accordingly, Mr. Kenoyer relied on exposure studies of what he terms the "similar

process of using compressed air to blow out dust in the brake repair industry" to develop his

switchgear exposure opinion.  *Id.*  This is nonsense.  While using compressed air to blow out

switchgear, on the one hand, and brakes, on the other, may be a similar process, there is no

reason to believe — and Mr. Kenoyer provides none — that the asbestos exposures associated

with the activities are similar or even comparable.  The material being blown out differs between

the two activities; specifically, brakes contain different asbestos-containing materials in different

concentrations than switchgears.  Likewise, brakes are exposed to friction forces (and wear) on a

continual basis; switchgear is not.  It also ignores key differences in frequency, proximity, and

duration of exposure between auto mechanics who regularly change brakes and electricians who

blow out switchgear as part of the process of doing certain maintenance or repair work (and even

more so non-electricians, like Mr. Kumferman, who sometimes happened to be in the area when electricians blew out switchgear).  Mr. Kenoyer simply has not established that brake studies are a scientifically valid comparator for asbestos exposures from switchgear.  Mr. Kenoyer's method for assessing asbestos exposure from switchgear thus amounts to nothing more than an unreliable apples-to-oranges comparison, and it must be excluded.  *See Total Containment, Inc. v. Dayco Prods., Inc.*, No. Civ.A. 1996-CV-6013, 2001 WL 1167506, at \*7 (E.D. Pa. Sept. 6, 2001) (rejecting an "apples and oranges" comparison where expert failed to establish similarity of the data he relied on to the facts of the case); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-46 (1997) (affirming trial court's exclusion of proffered expert's "extrapolat[ion]" from study data because the opinions were "connected to existing data only by the *ipse dixit* of the expert").

   *James Huttner.*  Plaintiff relies upon the generic opinions of Mr. Huttner to establish that switchgear deteriorates over time.  *See* Pl. Switchgear Br. at 9-11.  Mr. Huttner's report, however, makes no mention of asbestos, *see* Huttner Report, D.E. 154-5, and during his deposition, Mr. Huttner admitted that he did not know what the boards and arc chutes in switchgear were made of or if they contained asbestos, *see* Huttner Dep. (Surges case) (Ex. O) at 54:17-55:5 (called boards Bakelite), 55:13-16 ("no clue" if Bakelite contained asbestos), 78:4-8 (does not know what black boards were made of or if they contained asbestos), 80:10-18 (no reason to believe that electrical insulating board contained asbestos), 99:6-13 (not going to testify on chemistry of arc chutes and not an expert on what arc chutes are made of).  In short, Mr. Huttner's opinions do not establish that any GE switchgear contained asbestos.

   Mr. Huttner further explained that much of the dust that a lay person might associate with switchgear comes from the surrounding industrial environment, not the switchgear itself.  This is because the magnetic fields in switchgear "attract dust and dirt."  *Id.* at 182:15-184:7.  Even if a

worker blew dust out of a piece of switchgear, Mr. Huttner agreed that there is no way to tell if that dust came from the switchgear itself or was simply environmental dust that collected in the equipment.  *Id.* at 184:22-185:21 ("I didn't know what it was").  Accordingly, there is no evidence that the "dust" described in Mr. Stefonich's declaration came from the switchgear.

**Documents and Patents.**  CVLO also attempts to rely on a handful of GE documents and patents to establish that the particular GE switchgear that Mr. Kumferman allegedly worked around contained asbestos and that he would have been exposed to asbestos from those switchgear.  *See* Pl. Switchgear Br. at 6-7, 12-13, 16-17.  CVLO's argument fails because it has not shown that any of the documents cited in CVLO's generic brief relate to any switchgear products or product lines that Mr. Kumferman worked on or around.

As GE's corporate representative, Philip Hopkinson, has explained, switchgear is "a very general term" and "the components of switchgear vary considerably depending on both their intended application and their age."  Hopkinson Declaration (DeWitt case) (Ex. P) at ¶ 3; *accord id.* at ¶ 4 (explaining that GE "has made thousands of different products that could be considered switchgear").  Many types of GE switchgear did not contain asbestos.  *See, e.g.*, Hopkinson Dep. (Woods and Jurglanis cases) (Ex. Q) at 46:10-22, 191:7-192:15, 209:11-15.[10]

"The only way to know whether a GE switchgear contained asbestos is to check the mechanical drawings, if they still exist, to determine what components or materials were specified for the particular switchgear."  Hopkinson Declaration (DeWitt case) (Ex. P) at ¶ 4. Plaintiff's own experts, Mr. Wineman and Mr. Kenoyer, agree with this assessment.  Mr. Wineman testified that the only ways to determine whether material is asbestos are to test the

---

[10] Accordingly, while CVLO notes that some GE product manuals contained recommended procedures for cleaning switchgear, the cleaning was to remove environmental dust and contaminants.  Hopkinson Dep. (Woods and Jurglanis cases) (Ex. Q) at 110:5-111:18.

material or to review the manufacturer's documentation.  *See* Wineman Dep. (Jurglanis case) (Ex. K) at 88:23-89:5.  Mr. Kenoyer testified that he "wouldn't have an opinion with regard to whether there was any [asbestos] exposure from [work on switchgear] without having documentation on exactly what type of switchgear it is and what the design specifications for it were."  Kenoyer Dep. (Unzicker case) (Ex. N) at 105:7-13.  But "[t]he only way to access the drawing systems for these products is with a model or a serial number for the product at issue."  Hopkinson Declaration (DeWitt case) (Ex. P) at ¶ 4.  Accordingly, because plaintiff has not identified any model or serial numbers for the GE switchgear that Mr. Kumferman allegedly worked around, there is no way to know whether those switchgear contained asbestos.

> **2.     There is no evidence that GE turbines that Mr. Kumferman allegedly worked around contained asbestos or that Mr. Kumferman was exposed to any such asbestos.**

Likewise, there is no evidence that the GE turbine that Mr. Kumferman allegedly worked around contained asbestos.  *See* Kumferman Decl., D.E. 203-6 at 1-2 (no allegation that turbine at 3M plant in Menomonie contained asbestos).  GE disputes that the 3M plant in Menomonie, Wisconsin had a GE-made land-based steam turbine.  GE has no records suggesting that it ever shipped a turbine to this facility, and no records regarding any turbine allegedly at this location. It appears, therefore, that plaintiff's sudden recollection about his work at 3M plant is erroneous in more ways than one.[11]

Plaintiff also contends that certain GE documents, the testimony of GE's "turbine" witness Paul Banazewski, and the testimony of his millwright "expert" William LaPointe

---

[11]  Plaintiff's claim about when he worked around this turbine is demonstrably false.  He swore, under penalty of perjury, that he was around the turbine once in the 1960s.  Pl. Resp. Ex. 3 ¶ 3. The 3M plant in Menomonie, Wisconsin did not open until 1974.  *See* http://solutions.3m.com/wps/portal/3M/en_US/Menomonie/Plant/ (last accessed March 7, 2013); *see also* http://solutions.3m.com/wps/portal/3M/en_US/Menomonie/Plant/Facility/History/ (last accessed March 7, 2013).

establish that the (purely hypothetical) GE turbine at the 3M plant contained asbestos.  *See* Pl.'s

Response to Court-Ordered Discovery, D.E. 271 at 6.  They do not.

> ### a.   Plaintiff's references to GE documents and the testimony of GE's corporate representative do not establish that the alleged turbine contained asbestos.

Plaintiff relies on a number of GE documents to establish that the alleged GE turbine at

3M in Menomonie contained asbestos.  *See id.*  The documents do not support plaintiff's claim.

*First*, there is no evidence that any of these documents are from a time frame that would

have applied to the turbine at issue here.  Notably, plaintiff claims that he worked on "one

shutdown" in the 1960s, Kumferman Decl., D.E. 203-6 at 1, but all of the documents that

plaintiff attached to his brief are from the 1960s, *see* Pl. Resp. Ex. 4, D.E. 203-7 at 1 ("Issued:

Aug 8/67"); Pl. Resp. Ex. 5, D.E. 203-8 ("Issued Jan 16 62"); Pl. Resp. Ex. 6, D.E. 203-9

("Issued Re – Apr. 5 – 63"); Pl. Resp. Ex. 8, D.E. 203-11 (Issued Aug. 2, 67").  Given that

plaintiff did not claim to have been present when the turbine was installed, it is likely that none

of the these documents existed at the time that the alleged GE turbine was designed or built.  As

such, it would be utterly speculative to assume that these documents even applied to the turbine.

Such speculation cannot defeat summary judgment.

*Second*, the documents are facially inapplicable.  For example, Pl. Resp. Ex. 5 reflects a

specification set by an engineering firm called Sargent & Lundy.  *See* Pl. Resp. Ex. 5 at 1 (top).

There is no evidence that Sargent & Lundy had any involvement in the design of the 3M plant.

It bears mention that CVLO obtained this document when they were reviewing documents that

GE produced related to the Dresden Power Plant in Illinois; Sargent & Lundy was involved in

the construction of units at that power plant.[12]  Likewise, Pl. Resp. Ex. 6 reflects a specification

for a turbine associated with Master Parts List number D6630, *see* Pl. Resp. Ex. 6 at 1 (top,

"First Made for Steam Turbine M.P.L. D6630"), and Pl. Resp. Ex. 8 reflects a specification for a

turbine associated with Master Parts List number D5G30, *see* Pl. Resp. Ex. 8 at 1 (top, "First

Made for Large Steam Turbine M.P.L. D5G30").[13]  There is no evidence that the alleged GE

turbine at 3M was associated with either Master Parts List number.  Finally, Pl. Resp. Ex. 4 is

stamped "Canadian General Electric Company Limited," and there is no evidence that this

specification applied to the alleged GE turbine at issue here.  *See* Pl. Resp. Ex. 4 at 1 (top).

   *Finally*, at most, what the documents show is that there were many alternatives to choose

from when selecting insulation and other materials.  For example, plaintiff cites a generic

Technical Information Letter from 1989 where GE warned all of its customers about the

*potential* locations where asbestos might be found on a turbine.  Pl. Resp. Ex. 11, D.E. 203-14 at

2 ("The purpose of this Technical Information Letter is to inform our customers of the possible

locations of asbestos containing materials").  Nowhere does this letter suggest that all turbines

had asbestos.  Similarly, the other documents cited by plaintiff reveal that customers had choices

about which types of products would be used on a turbine.  *See* Pl. Resp. Ex. 4 at 1 (providing

thermal specifications for heat retention fillers and then listing some "Materials of the type and

quality required"), 2 (providing multiple options for envelopes holding heat retention fillers), 3

(providing thermal specifications for low temperature heat retention fillers and then listing some

"Materials of the type and quality required"); Pl. Resp. Ex. 5 at 6-9 (providing general

---

[12]  *See*
http://www.exeloncorp.com/assets/energy/powerplants/docs/Dresden/Dresden%20Generating%2
0Station%202012%20Fact%20Sheet%20Final.pdf (last accessed March 7, 2013).

[13]  As GE's turbine witness, Mr. Paul Banaszewski, has explained to CVLO, "Each turbine is
unique by its serial number, and there is a master parts list assigned to that serial number, so it is
unique to that serial."  Banaszewski Dep. (Unzicker case) (Ex. R) at 20:14-21:4.

descriptions of various materials and then listing some exemplar "makes" that would satisfy the description); Pl. Resp. Ex. 6 at 8-11 (same); Pl. Resp. Ex. 8 at 5-6 (same).  Indeed, as GE's turbine witness, Mr. Paul Banaszewski, has explained to CVLO, the specifications for a particular turbine vary depending upon the particular specifications set by the customer or the engineering firm hired by the customer.  Banaszewski Dep. (Unzicker case) (Ex. R) at 23:11-25:25, 57:10-58:20, 156:12-157:12; *see also id.* at 84:20-85:5 (explaining that customers did not have to follow GE's proposed heat retention specifications).  Accordingly, none of these documents establish that the alleged GE turbine at issue here had asbestos.[14]

> **b.      Plaintiff's expert witness does do not establish that the alleged turbine contained asbestos.**

Plaintiff also attempts to rely upon his expert, Mr. LaPointe, a former union millwright, to establish that the GE turbine allegedly at the 3M plant contained asbestos.  Pl. Resp. at 6.  Mr. LaPointe should not be allowed to offer any such opinion.

*First*, Mr. LaPointe's opinions are entirely generic.  *See* LaPointe Report (D.E. 154-4). Nowhere in his expert report did he discuss the 3M plant in Menomonie, Wisconsin or the insulation that may have been on a turbine at that plant.  As such, plaintiff should not be allowed to elicit any such case-specific opinions from Mr. LaPointe.  Fed. R. Civ. P. 26(a)(2)(B).

*Second*, Mr. LaPointe has agreed that in order "to know how a particular turbine was insulated, you need to look at documents."  LaPointe Dep. (Bushmaker case, 12/6/11) (Ex. S) at 126:12-21; *accord* LaPointe Dep. (Bushmaker case, 2/20/12) (Ex. T) at 73:15-18, 79:10-16 (agreeing that "[i]n order to know how a specific turbine was insulated you would have to see the

---

[14]  Plaintiff takes Mr. Banaszewski's testimony out of context, suggesting that GE would oversee the insulation and maintenance of all of its turbines.  Pl. Resp. at 9-10.  To the contrary, Mr. Banaszewski testified that GE's involvement with the turbine installation, insulation, and maintenance depended on what a particular customer wanted.  Banaszewski Dep. (Unzicker case) (Ex. R) at 96:24-97:9, 98:6-14, 107:19-108:14.

records for that particular machine").  But, before reaching his opinions in this case, Mr.

LaPointe did not review or rely upon any specifications for any GE turbines, much less

specifications for the alleged turbine at the 3M plant.  LaPointe Dep. (Bushmaker case, 2/20/12)

(Ex. T) at 105:20-106:7, 123:5-124:6; *see also* LaPointe Report (D.E. 154-4) (not disclosing that

he relied upon any GE-related documents when forming his opinions).  Accordingly, Mr.

LaPointe cannot competently opine about the insulation that may have been on the alleged

turbine at the 3M plant.

   *Third*, Mr. LaPointe should not be allowed to offer testimony concerning "standard"

insulation practices or procedures that supposedly would have been used at the 3M plant.  This is

because he has admitted that he only knows about the practices and procedures that were used at

the job sites where he worked during his career as a millwright.  LaPointe Dep. (Bushmaker

case, 2/20/12) (Ex. T) at 79:21-80:10; *see also* LaPointe Report (D.E. 154-4) at 9-15 (Mr.

LaPointe never worked at the 3M plant in Menomonie, Wisconsin).  Mr. LaPointe further

admitted that he does not have "any knowledge of what went on on other job sites" and,

accordingly, would not know the details about what happened at those other job sites.  LaPointe

Dep. (Bushmaker case, 2/20/12) (Ex. T) at 80:11-23; *see also id.* at 217:19-23 (backing away

from his opinion that all turbines contained asbestos until the 1980s); LaPointe Dep. (Bushmaker

case, 3/22/12) (Ex. U) at 39:17-21.

   *Finally*, Mr. LaPointe should not be allowed to offer any opinions about the historic

asbestos-content of insulation because he has no relevant expertise.  For example, he has "never

been trained in how to identify asbestos-containing material."  LaPointe Dep. (Bushmaker case,

2/20/12) (Ex. T) at 101:13-102:6 ("I don't pretend to be an expert in what it is"); *accord id.* at

196:7-16 (explaining that, instead of learning whether insulation contained asbestos, he treated it

all as if it did); LaPointe Dep. (Bushmaker case, 12/6/11) (Ex. S) at 27:24-28:3 (never reviewed the results of the tests of any material to see if it contained asbestos).  He further admitted that his use of the term "asbestos" to refer to insulation has little meaning:

> Q:    I take it even if you call them asbestos blankets you don't know whether they were actually, in fact, made of as[bestos] or something else, isn't that true?
>
> A:    This is true.  They – That term was used quite generically in the industry at that time by everyone.

LaPointe Dep. (Bushmaker case, 2/20/12) (Ex. T) at 174:20-23; *accord id.* at 202:12-203:11.

*     *     *

In light of the foregoing, it would be utterly speculative to conclude that Mr. Kumferman worked on or around asbestos-containing GE products and even more speculative to conclude that he was exposed to asbestos from these products.  Such speculation cannot defeat a motion for summary judgment.  *Zielinski v. A.P. Green Indus., Inc.*, 661 N.W.2d 491, 497 (Wis. Ct. App. 2003) ("when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced," summary judgment must be granted to the defendant); *see also Risse*, 2012 WL 2545394, ¶¶ 27-29; *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 N.W.2d 652, 654 (Wis. 1978); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position" is "insufficient" to defeat a motion for summary judgment).  *See also* Order, D.E. 189 in 2:08-cv-91663 (Apr. 30, 2012) at 14-15 (granting CBS's motion for summary judgment in *Bault* because although there was evidence that certain Westinghouse switchgear contained asbestos, "there is no evidence that Decedent worked with or around" such switchgear and thus "no reasonable jury could conclude from the evidence that Decedent was exposed to asbestos from a Westinghouse product"); Order, D.E. 163 in 2:08-cv-92083 (Apr. 30, 2012) at 12 (granting CBS's motion for summary judgment in *Buchanan* on same rationale).

23

**C.     GE is Entitled To Summary Judgment Because Mr. Kumferman Cannot Prove that Any Hypothetical Exposure to Asbestos from a GE Product was a Substantial Factor in Causing His Injuries.**

Even if the Court were to assume, without evidence, that Mr. Kumferman may have been exposed to asbestos from a GE product, his claims would still fail because he cannot show that any such exposure was a substantial factor in causing his asbestosis or colon cancer.  Wisconsin follows the "substantial factor" test for causation.  *Singer v. Pnuemo Abex LLC*, 2012 WL 130295, ¶ 16 (Wis. Ct. App. Jan. 18, 2012).  Wisconsin's test is rooted in the Restatement (Second) of Torts § 431.  *See Hatch v. Smail*, 23 N.W.2d 460, 462 (Wis. 1946).  Comment a of the Restatement provides:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . .  The negligence must also be a substantial factor in bringing about the plaintiff's harm.  The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in a popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense" which includes everyone of the great numbers of events without which any happening would not have occurred.

In other words, "[a] mere possibility" of causation is not sufficient.  *Zielinski*, 661 N.W.2d at 497.  Rather, an asbestos plaintiff must show that his exposure to an asbestos-containing GE product had "such an effect" in causing harm that it would lead a "reasonable person[] to regard it as a cause, using that word in the popular sense."  *Merco Distrib. Corp. v. Commercial Police Alarm Co.*, 267 N.W.2d 652, 654 (Wis. 1978).  Plaintiff cannot carry his burden of proof on legal causation.

**First**, for the reasons explained in Part I.B, *supra*, plaintiff has not shown that he was ever exposed to asbestos associated with GE products.  Consequently, he cannot establish that GE products were a "substantial factor" in causing his asbestosis or colon cancer.

**Second**, none of plaintiff's experts has opined that the plaintiff was exposed to asbestos from a GE product, much less that this exposure was a "substantial factor" in causing his asbestosis or colon cancer.[15]  Without expert testimony drawing a causal connection between Mr. Kumferman's alleged exposures to asbestos from GE products and his disease, plaintiff's causation claims fail.  *See Kujawski v. Arbor View Health Care Ctr.*, 407 N.W.2d 249, 252-53 (Wis. 1987) (expert testimony is required when "the trier of fact is faced with matters requiring special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind").

**Third**, even if plaintiff's experts had attempted to opine that the plaintiff was exposed to asbestos from GE products, any such opinions would have been inadmissible under *Daubert* and Federal Rules of Evidence 702 and 703.[16]  This is because such case-specific exposure opinions

---

[15]  *See generally* Report of Nachman Brautbar (D.E. 154-1) (case specific medical report that does not mention GE); Report of Arnold Brody (D.E. 154-7) (generic opinion on the types of asbestos induced lung diseases); Report of Barry Castleman (D.E. 154-6) (generic opinion on the historic knowledge of the hazards of asbestos); Report of Joseph Ferriter (D.E. 154-3) (generic report on the general type of work performed by pipefitters); Report of James Huttner (D.E. 154-5) (generic report on the general type of work performed by electricians); Report of Stephen Kenoyer and Kenneth Garza (D.E. 154-2) (case specific occupational exposure report that does not mention GE, and generic report on the ranges of potential asbestos exposures associated with certain activities); Report of William LaPointe (D.E. 154-4) (generic report on the type of work performed by millwrights); Report of William Longo (D.E. 154-8) (generic report on potential exposures to asbestos from gaskets); Report of Samuel Wineman (D.E. 154-11) (generic report on potential exposures to asbestos from switchgear).  Plaintiff's experts should not be allowed to testify or submit affidavits that exceed the scope of their reports.  Fed. R. Civ. P. 26(a)(2)(B) (reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them").  Even if plaintiff had attempted to rely on his experts to fill in the gaps of his exposure claims against GE, any such effort would fail because expert witnesses cannot fill in the factual gaps in factual exposure testimony.  *See Elcock v. Kmart Corp.*, 233 F.3d 734, 756 & n.13 (3d Cir. 2000) (abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record).

[16] Plaintiff's Response to Court-Ordered Discovery Requests appears to attempt to incorporate the opinions of Drs. Arthur Frank, Henry Anderson, and Carlos Bedrossian.  *See* D.E. 271 at 13.  Plaintiff has not, however, disclosed any of these physicians as experts in this case.  *See* Plaintiff's Statement of Expert Witness Reports 9-4-12, D.E. 105.  Accordingly, reliance on the

25

would have been based entirely on speculation and assumptions. *E.g.*, Kenoyer and Garza Report at 1-2 (D.E. 154-2) (citing no record facts that would support an occupational exposure opinion concerning GE; experts did not even review plaintiff's answers to interrogatories)[17]; Brautbar Report at 2-3 (D.E. 154-1) (citing no record facts to support work history summary). Such opinions — not based on any facts or data — are unreliable from the start and must be excluded. *Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414 (3rd Cir. 2002) ("It is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record."); *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[i]f an expert opinion is based on speculation or conjecture, it may be stricken"); *JMJ Enters., Inc. v. Via Veneto Italian Ice, Inc.*, No. Civ. A. 97-CV-0652, 1998 WL 175888, at *6 (E.D. Pa. April 15, 1998) ("An expert's testimony must have some connection to existing facts"); *Am. Bearing Co. v. Litton Indus.*, 540 F. Supp. 1163, 1172 (E.D. Pa. 1982) (economist's opinion excluded because it was based in part on a statement that was partly based on unsupported assumptions and was, therefore, not the type of statement on which an expert economist would reasonably rely), *aff'd* 729 F.2d 943 (3d Cir. 1984); *see also In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999); Fed. R. Evid. 702(b) (expert testimony is admissible only if it "is based on

---

opinions of Drs. Frank, Anderson, and Bedrossian is improper. Fed. R. Civ. P. 26(a)(2)(A) ("a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705").

[17] Indeed, the <u>only</u> evidence that Kenoyer and Garza rely on is the deposition of the plaintiff taken in *other* cases. *See* Kenoyer and Garza Report at 1 (D.E. 154-2). Because GE was not listed on this deposition notice, *see* First Amended Notice of Videotaped Deposition of Henry Kumferman (Ex. G), plaintiff cannot rely on this testimony to establish his claims against GE, *see* Deposition Protocol (Ex. H) ¶¶ 6, 11 n.4. Nor can plaintiff's experts. *See* Order, *Malone v. AC & S, Inc.*, No. 2:10-cv-68125, D.E. 170 (E.D. Pa. Sept. 26, 2012) (Ex. N) (striking a report by Kenoyer and Garza as to defendant Georgia Pacific because Kenoyer and Garza relied only on a fact witness deposition that was not noticed as to Georgia Pacific).

sufficient facts or data"); Fed. R. Evid. 702(a) (expert testimony admissible only if it helps the jury "understand *the evidence* or to determine a fact in issue") (emphasis added).

## II.  TO THE EXTENT THAT PLAINTIFF CLAIMS EXPOSURE TO LAND-BASED STEAM TURBINES MANUFACTURED BY GE, THESE CLAIMS ARE BARRED BY THE WISCONSIN STATUTE OF REPOSE.

As set forth above, there is no evidence that he was exposed to asbestos from any GE turbines.  Even if he was, however, plaintiff's turbine exposure claims would be barred by the Wisconsin statute of repose.[18]

Wisconsin Courts have held that under Wisconsin's statute of repose, Wis. Stat. § 893.89, "no claim may be made after the ten years for any injury arising out of a defect in design or construction of [an improvement to real property]."  *Mair v. Trollhaugen Ski Resort*, 715 N.W.2d 598, 606-09 (Wis. 2006) (construing Wis. Stat. § 893.89) (plaintiff's negligence claim related to injuries sustained from alleged structural defects in bathroom of ski resort barred by statute of repose).

Wisconsin Statute § 893.89 provides in pertinent part that:

> (2) Except as provided in sub. (3), no cause of action may accrue and no action may be commenced, including an action for contribution or indemnity . . . against any person involved in the improvement to real property after the end of the exposure period [which is 10 years immediately following the date of substantial completion of the improvement to real property], to recover damages for . . . any injury to the person, or for wrongful death, arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property . . . .

Wis. Stat. § 893.89(2).

---

[18]  GE notes that this Court has previously deferred ruling on a Wisconsin statute of repose argument in favor of letting the transferor court address the issue.  *See Anderson v. A.W. Chesterton Co.*, No. 2:11-cv-63482, 2012 WL 2877452 (E.D. Pa. April 5, 2012).

This statute of repose applies to any claims by plaintiffs to recover damages for alleged injury arising out any deficiency or defect in the design, construction and or furnishing of materials for GE turbines, because these turbines are improvements to real property.  In determining what constitutes an "improvement to real property" under similar statutes of repose, Wisconsin Courts have used the following definition of improvement: "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs."  *Kallas Millwork Corp. v. Square D Co.*, 225 N.W.2d 454, 456-57 (Wis. 1975) (citations omitted).  Without turbines, a powerhouse would not be able to fulfill its purpose of generating power.  Put simply, the turbines are an integral part of a powerhouse without which it could not function and therefore, necessarily, make the property more useful and valuable.

Here, plaintiff filed suit years after his last possible contact with any turbines allegedly manufactured by GE.  *See* Plaintiff's First Response to Standard Interrogatories – 8/14/12 (Ex. B) at Ex. A (work history ends in 1989); Kumferman Decl., D.E. 203-6 at 1 (worked around GE turbine at 3M plant in Menomonie in 1960s).  Because plaintiff has not established that he worked on or around a GE turbine within ten years of filing his claims for asbestosis or colon cancer, his claims are barred.[19]

---

[19]  While GE has made a *prima facie* showing that the statute of repose applies, GE anticipates that plaintiff may respond by arguing that his claims fall within one or more of the limited exceptions to this statute.  Any such argument would fail.  For example, the exception for maintenance work is inapplicable because this exception only applies to "[a]n owner or occupier of real property for damages resulting from negligence in the maintenance, operation, or inspection of an improvement to real property."  Wis. Stat. 893.89(c)(4).  GE was not an owner or occupier of any of the jobsites where the plaintiff worked.  Likewise, the exception for manufacturers or producers of a material does not apply, Wis. Stat. 893.89(c)(2), because there is no evidence that any asbestos-containing materials (if any) on the turbine were manufactured or

**III.   GE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS
FOR COLON CANCER BECAUSE PLAINTIFF'S MEDICAL EXPERT DID NOT
OPINE THAT PLAINTIFF'S COLON CANCER WAS CAUSED BY HIS
EXPOSURES TO ASBESTOS.**

GE is entitled to summary judgment on plaintiff's claim that his exposures to asbestos

caused his colon cancer for another reason:  plaintiff has no expert testimony establishing a

causal connection between his exposures to asbestos and his colon cancer, much less expert

testimony establishing a causal connection between his alleged exposures to asbestos from GE

products and his colon cancer.  Under Wisconsin law, in order to establish causation plaintiff

must provide expert testimony linking his exposures to his colon cancer.  *See Kujawski*, 407

N.W.2d at 252-53 (expert testimony is required when "the trier of fact is faced with matters

requiring special knowledge or skill or experience on subjects which are not within the realm of

the ordinary experience of mankind").

In this case, the plaintiff has provided a case-specific causation report from a single

medical expert, Dr. Brautbar (D.E. 154-1).  While Dr. Brautbar opines that the plaintiff's

asbestosis was caused by his exposures to asbestos, Dr. Brautbar's expert report does not include

any opinion that the plaintiff's colon cancer as caused by his exposures to asbestos.  *See* Brautbar

Report (D.E. 154-1) at 7 ("My Opinion" section, which does not mention plaintiff's colon

cancer).  Because Dr. Brautbar did not disclose any medical causation opinions with regard to

the plaintiff's colon cancer, plaintiff should not be allowed to elicit any such opinions from Dr.

Brautbar.  Fed. R. Civ. P. 26(a)(2)(B) (reports must contain "a complete statement of all opinions

---

supplied by GE.  In any event, this exception is irrelevant because plaintiff has not alleged a
*defect in* a material used on the turbine.  At most, plaintiff has alleged that the material selection
— a design decision — was negligent.  GE reserves its right to further address any exceptions to
the extent that plaintiff raises those exceptions in his response brief.

the witness will express and the basis and reasons for them").  Without expert testimony to

establish causation, GE is entitled to summary judgment on plaintiff's claims of colon cancer.

## CONCLUSION

For the foregoing reasons, General Electric Company requests that this Court enter

summary judgment in its favor on all of plaintiff's claims.  GE further requests that the Court

direct entry of final judgment in its favor pursuant to Fed. R. Civ. P. 54(b).  A proposed order is

attached hereto as Exhibit V.

Dated:  December 10, 2013                      Respectfully submitted,

                                               GENERAL ELECTRIC COMPANY


                                               By:   */s/ Jeffrey M. Schieber*_____
                                                     One of Its Attorneys

                                                     Maja C. Eaton
                                                     Timothy E. Kapshandy
                                                     Jeffrey M. Schieber
                                                     SIDLEY AUSTIN LLP
                                                     One South Dearborn Street
                                                     Chicago, Illinois  60603
                                                     (312) 853-7000
                                                     meaton@sidley.com
                                                     tkapshandy@sidley.com
                                                     jschieber@sidley.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2013, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

Dated:  December 10, 2013

                              */s/ Jeffrey M. Schieber*_____